UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
HECTOR CIPRIAN,

        Petitioner,                        **MEMORANDUM & ORDER**
                                                       05-CV-083 (NGG)
    - against -

DAVID L. MILLER, Superintendent,
Fishkill Correctional Facility,

        Respondent.
----------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       Pro se Petitioner Hector Ciprian ("Petitioner" or "Ciprian") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, filed on January 7, 2005, he challenges the constitutionality of a judgment entered against him in the New York State Supreme Court, Kings County. Having reviewed the state court record and the parties' submissions, for the reasons set forth below, Ciprian's petition for a writ of habeas corpus is denied.

    **I.**    **Factual Background**

       On May 10, 1999, Petitioner was convicted of one count of Assault in the First Degree under N.Y. Penal Law Section 120.10[1] and sentenced to twelve years in prison. (Petition Under 28 U.S.C. § 2254 ("Petition") at 1; March 31, 2005 Solomon Neubort Affidavit in Opposition to Petition for a Writ of Habeas Corpus ("Opp. Aff.") ¶¶ 6, 8.) At trial, Petitioner, an alleged member of the "Papi Chulos" street gang, was charged with punching Emanuel Aracena ("Aracena") in the face and stabbing him in the left side, piercing his stomach and spleen. (Opp. Aff. ¶¶ 4-6.) On September 10, 1998 at approximately 7:20 p.m., Aracena was listening to a walkman while he stood in front of a pharmacy on 44th Street and 5th Avenue in Brooklyn. (Id.

at ¶ 5.) Two of Aracena's friends, Willis Kinard and Carlos Gil ("Gil"), were standing about ten feet away from Aracena, in front of Gil's house. (Id.) Petitioner approached Aracena and asked him what he "was looking at," before then punching and stabbing him. (Id.)

The instant Petition challenges the trial court's decision not to excuse a juror who was ill. While charging the jury, the trial judge, Justice Carolyn Demarest, *sua sponte*, asked one of the jurors if she was listening:

> THE COURT: Miss Morales, are you with us[?]
>
> THE JUROR: I don't feel too good.
>
> THE COURT: Are you hearing the instructions clearly[?]
>
> THE JUROR: Yes, I am listening.

(April 28, 1999 Trial Transcript ("Tr.") at 450.) Justice Demarest completed charging the jury. (Id. at 450-62.) Just after the jury had left the courtroom to begin deliberations, Justice Demarest inquired as to what Petitioner's position would be if Morales became too ill to continue serving on the jury. (Id. at 462.) Petitioner's counsel stated that "[h]e will not make an advance commitment to agree to substitute. I am not saying I will not, I am not saying he won't." (Id. at 462.)

Justice Demarest decided to bring Morales back into the courtroom to inquire as to her condition:

> THE COURT: You said during my questioning you didn't feel well.
>
> MS. MORALES: I get migraines and I was just trying to hold the pain, I took my medication upstairs.
>
> THE COURT: You have something for it.

> MS. MORALES: Yes.
>
> THE COURT: And do they work?
>
> MS. MORALES: I hope so.
>
> THE COURT: It is a headache that you have?
>
> MS. MORALES: Yes, bad headaches that I get.
>
> THE COURT: Do you think having lunch may help.
>
> MS. MORALES: I don't know, I just took my medicine, I hope that will help.
>
> THE COURT: So you feel you are able to stay on and continue.
>
> MS. MORALES: Yes.
>
> THE COURT: Thank you, Miss Morales, we wanted to be sure.

(Id. at 463-64.) At that time, Petitioner did not object to Morales's continued service on the jury or the adequacy of the court's inquiry. (Opp. Aff. at 3.) The jury thereafter was permitted to began its deliberations (Id.) After lunch, the court received two notes from the jury, after which it was re-read some of the witness testimony and was given a clarification about one of the jury charges. (Id. at 4.) Immediately after reading the clarification of the charge and the witness testimony, Justice Demarest inquired again as to Morales's condition:

> THE COURT: I asked the sergeant to hold Miss Morales to make sure she is feeling up to this before we get further into this, I want to ask her how she is doing. Bring her in.
>
> (Whereupon, Ms. Morales enters the courtroom)
>
> THE COURT: Hi, how are you feeling?
>
> MS. MORALES: I don't feel good, I couldn't even eat the lunch.

> THE COURT: You don't look very well, that is why I was wondering.
>
> MS. MORALES: I feel terrible.
>
> THE COURT: Are you able to participate in deliberation.
>
> MS. MORALES: I don't know, I want to go home.

(Id. at 473-74.) At that point, Morales left the courtroom. The court explained that Morales appeared to be very ill and the medication she had taken did not appear to help. (Id. at 474.) The court explained that there were two alternative jurors who had been present through the read back. (Id.) The trial court convened a sidebar to hear the parties' positions on how to proceed, at which Petitioner was represented by Peter Bark, at attorney-at-law:

> THE COURT: Okay, Mr. Bark.
>
> MR. BARK: My client will not consent to a substitute. Based on her answers at this time, I don't think she even believed that she can deliberate and I would ask for a mistrial.
>
> THE COURT: Let's bring her back in and tell her that, let's find out whether it is possible. She didn't initiate an inquiry, because it appeared, and I asked you earlier whether you would consider, I know you made no commitment and that is why we kept the alternates.
>
> (Ms. Morales enters the courtroom.)
>
> THE COURT: Miss Morales, we will ask you to continue deliberating, I know you are not feeling very well.
>
> MS. MORALES: I just need some cold water, a cold rag.
>
> THE COURT: You said earlier you had taken some medication.
>
> MS. MORALES: It made me worse.
>
> THE COURT: Upset your stomach. Is there any kind of food we

> can provide for you that might be easier to eat than the lunch you ordered.
>
> MS. MORALES: I will just put some cold rags on my head, that is what I was doing upstairs earlier, I put cold tissues on my head.
>
> THE COURT: Let us know if there is anything we can do. I see you are not feeling great but you seem a little better now.
>
> MS. MORALES: I want to put some cold rags on my head.
>
> THE COURT: You feel you are able to continue.[1]
>
> MS. MORALES: I will be okay, thank you.
>
> THE COURT: Thank you, I hope you feel better.

(Id. at 475-76.) Justice Demarest explained that she was "satisfied that Miss Morales is able to continue notwithstanding whatever discomfort she is suffering from and she is willing to stay on." (Id. at 476.) As a result, she denied Ciprian's request for a mistrial.

Following the jury trial, Petitioner was convicted of one count of Assault in the First Degree and was sentenced to twelve years in prison. (Opp. Aff. at 6.) In his direct appeal, Ciprian argued that the trial court improperly permitted Morales to continue deliberating after she complained of a migraine headache during deliberations. The Appellate Division unanimously affirmed Petitioner's judgment of conviction, finding that, under New York C.P.L. 470.05[2], Ciprian had failed to preserve this argument for appellate review. People v. Ciprian, 309 A.D.2d

---

[1] During Petitioner's direct appeal before the Appellate Division, he asserted that the lack of a question mark at the end of this sentence indicated that Justice Demarest had told Morales that she was able to continue as opposed to asking whether she was able to continue. People v. Ciprian, 309 A.D.2d 874, 766 N.Y.S.2d 43 (2d Dep't 2003). Although the Appellate Division did not appear to have made any finding as to whether Justice Demarest's words were a statement or a question, I note that the transcript contains numerous sentences that appear to be questions but that end in a period instead of a question mark. Furthermore, Morales's response seems to be in answer to a question.

874, 766 N.Y.S.2d 43 (2d Dep't 2003). The Appellate Division also offered an alternative holding that the trial court "properly questioned [Morales] pursuant to [New York C.P.L. 270.35(2)], and providently exercised its significant discretion in determining that the juror was able and willing to continue[.]" Id.

On December 22, 2003, the New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Ciprian, 1 N.Y.3d 569, 775 N.Y.S. 2d 786 (N.Y. 2003) (Smith, J.). He has brought the instant petition for a writ of habeas corpus, arguing that the trial court should have discharged the juror, Morales, who had complained of the migraine headache during deliberations.

**II.      Discussion**

    **A.      Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") sets forth the standard of review for habeas corpus petitions. The court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." For claims that have been fully adjudicated on the merits in state court, a petitioner must show that the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (per curiam)

(holding that habeas relief is warranted "only upon a showing that the state court unreasonably applied clearly established *Supreme Court* precedent") (emphasis in original).

In assessing the "contrary to" provision, the Supreme Court has held that a state court's decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). The "unreasonable application" prong is implicated "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In this analysis, a determination of the reasonableness of the application of the law is done from an objective, rather than subjective, standpoint. Id. at 409-410. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

**B.  Petitioner's Claim**

Petitioner raises only one challenge to his state-court conviction on habeas review: the trial court violated Petitioner's "due process" rights when it refused to discharge an ill juror or grant a mistrial as a result of the juror's illness. (Petition ¶ 12.)

The Appellate Division held that the Petitioner's challenge to the trial court's decision to permit Morales to continue deliberating was procedurally barred. The Appellate Division rested its decision on New York C.P.L. § 470.05[2], which preserves for appellate review only those

questions of law as to which "a protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." Id.

Here, the court questioned Morales about her headache on four different occasions, once during the final jury charge and three times during deliberations. (Memorandum of Law in Opposition to Petition ("Opp. Br.") at 2.) She repeatedly gave unequivocal answers that she was able to continue deliberating. (Id.) After the second inquiry of Morales, Petitioner's attorney told the court that he would not consent to a substitute juror and asked for a mistrial. (Id. at 3.) After the court made a final determination, however, Petitioner did not make any objection or suggest the alternative action he raised for the first time on appeal, namely that the court should have adjourned the case to monitor the juror's condition. Defense counsel furthermore refused to consent to discharging the juror and argued that nothing less than a mistrial would suffice. (Id.) Accordingly, the Appellate Division was not unreasonable in finding that Petitioner failed to preserve his claims for appellate review under state law. See N.Y. Crim. Proc. L. § 470.05(2); People v. Robinson, 88 N.Y.2d 1001, 1002 (1996) (to preserve an objection or exception for appellate review, the objection or exception must be made with specificity at trial when the court has the opportunity to address the asserted error); People v. Tones, 30 N.Y.2d 944, 945 (1992) (claim raised for the first time on appeal that the court's inquiry of juror was insufficient is unpreserved for appellate review.)

It is well established that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v.

Leonardo, 898 F.2d 7, 9 (2d Cir. 2000); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("where a state says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved"). New York C.P.L. § 470.05[2] is an adequate and independent state procedural rule. Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999).

Here, the Appellate Division explicitly stated that the Petitioner's claim that Morales should not have been permitted to continue deliberating was procedurally barred by C.P.L. § 470.05[2]. Thus, that claim has been decided on an independent and adequate state ground. The alternative holding on the merits does not obviate application of the procedural bar doctrine. See Harris, 489 U.S. at 264 n.10 ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding . . . as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision") (emphasis in original). Therefore, Petitioner's claim that his due process rights were violated is procedurally barred from habeas review.

Although this claim has been procedurally defaulted, the Petitioner can overcome the procedural bar if he can either (1) demonstrate that the failure to consider the federal claim will result in a fundamental miscarriage of justice, specifically the conviction of an actually innocent person, or (2) show good cause for the default and that he will be prejudiced by non-review of the claim. See Harris, 489 U.S. at 262; Vargas v. Keane, 86 F.3d 1273, 1280 (2d Cir. 1996). Petitioner has made no such showing: he has neither demonstrated that he is actually innocent, nor has he shown good cause for the default and prejudice therefrom. As a result, this court need not review the claim on the merits.

Even if Petitioner's claim that the trial judge should have discharged Morales was not

procedurally barred, the court would deny the claim on the merits. To the extent that Petitioner is arguing that his due process rights were violated by the trial court's failure to follow New York Criminal Procedure Law properly or that the trial judge's decision not to discharge the juror was based on "an unreasonable determination of the facts," Petitioner's claim is meritless. Under New York law, the trial court must dismiss a juror who is "unable to continue serving by reason of illness, other incapacity, or for any other reason is unavailable for continued service." N.Y.C.P.L. § 270.35(1). The trial judge is also required to "make a reasonably thorough inquiry concerning such illness [or] incapacity[.]" N.Y.C.P.L. § 270.35(2). Whether the juror is ill, incapacitated or unavailable is trusted to the sound discretion of the trial court. See Morales v. Strack, 99-CV-1617(JBW), 2003 WL 21816963, at *5 (E.D.N.Y. July 3, 2003); People v. Settles, 28 A.D.3d 591, 591, 813 N.Y.S.2d 501, 502 (2d Dep't 2006); People v. McDonald, 143 A.D.2d 1050, 1051, 533 N.Y.S.2d 894 (2d Dep't 1988) ("The standard for determining when to substitute an alternative juror for a sworn juror pursuant to C.P.L. 270.35 is a flexible one and the decision of whether a juror is unable to continue serving is left to the trial court's broad discretion").

There is absolutely no basis for concluding that the trial judge abused her discretion in deciding that the juror was able to continue deliberating. Nor did the court's conclusion that Morales could continue to serve as a juror constitute "an unreasonable determination of the facts." Further, the court notes that under New York law, once the jury had begun deliberating, the trial judge was unable to replace Morales with an alternate juror without the Petitioner's consent. N.Y.C.P.L. § 270.35(1). The record is clear that Petitioner refused to consent to Morales's replacement by an alternate.

### III. Conclusion

For the reasons set forth above, Petitioner's claim that the trial court improperly failed to discharge a juror does not warrant habeas relief under AEDPA § 2254(d). The petition for a writ of habeas corpus is therefore denied. Because there is no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C § 2253(c) ("A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."). The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. The Clerk of Court is directed to close the case.

SO ORDERED.

Date: December 3, 2007　　　　　　　　　　　　/s Nicholas G. Garaufis
　　　　Brooklyn, N.Y.　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge